## P. S. LAYTON v. THE STATE.

CRIMINAL LAW. *Instruction. Witness. Evidence.*

It is error to charge the jury, in a felony case, that if they believe the prisoner's chief witness swore falsely, from dislike to the injured party, they may disregard his testimony, where there is no evidence of such dislike.

ERROR to the Circuit Court of Clarke County.

Hon. J. S. HAMM, Judge.

The plaintiff in error was indicted for an assault with intent to murder Robert L. Henderson, convicted, and sentenced to ten years' imprisonment in the penitentiary.

*W. H. Hardy*, for the plaintiff in error.

The verdict shows, that the jury wholly disregarded Bowling's testimony, in obedience to the fifth instruction, which was inapplicable to the case made by the evidence, and therefore erroneous, as often decided by this court. *Hogan* v. *The State*, 46 Miss. 274; *Cothran* v. *The State*, 30 Miss. 541; *Frank* v. *The State*, 39 Miss. 70; *Oliver* v. *The State*, 39 Miss. 526.

*W. H. Hardy* also argued the case orally.

*T. C. Catchings*, Attorney-General, for the State.

The fifth instruction could not have affected the verdict, even if inapplicable to the evidence, since other witnesses testified to the same facts as Bowling, and all were disbelieved.

*T. C. Catchings*, Attorney-General, also made an oral argument.

CAMPBELL, J., delivered the opinion of the court.

The only error discoverable in this record is in the fifth instruction given for the State. Alfred Bowling was the most important witness for the plaintiff in error. His testimony, if true, entitled the plaintiff in error to a verdict. He claimed to have seen all that was done by Henderson and the plaintiff, immediately connected with the rencounter. The other two witnesses for plaintiff in error did not testify to having seen so much of the affair as did Bowling. The court had refused the continuance asked by plaintiff in error on account of the

absence of two of his witnesses, by whom he averred that he could prove substantially the same facts as were testified to by Bowling; and he was entitled to the benefit of the favorable testimony of the witness Bowling, without any intimation from the court directed against his credibility, and calculated to impair it. The counsel for the State had interrogated this witness, with a view to elicit from him an admission that he disliked Henderson. He had denied that he disliked Henderson, and professed to have greater regard for him than for most other white men; and asseverated that he not only had no unkind feeling towards Henderson, but that he had no feeling in the case, and was not acquainted with the prisoner. In view of this, it was not proper for the court to single out this witness by name, and tell the jury, that, if they believed that he had testified falsely, "from any feeling of dislike towards Henderson," they might disregard his evidence altogether. It was proper to tell the jury that it was the judge of the credibility of witnesses; but it was not proper to draw special attention to the most important witness for the prisoner, and suggest, as a ground for disregarding his testimony, a state of his feelings towards Henderson which he had denied, and of the existence of which there is no evidence. This was calculated to lead the jury to discredit Bowling, by assuming that he had a dislike for Henderson, which caused him to swear falsely, from the fact that the court had so instructed. An instruction which embodies an hypothesis, to sustain which there is no evidence, should never be given.

This is the well-settled rule in civil cases, and is equally applicable to criminal cases. It is especially important with reference to the credibility of a witness, which may be so easily assailed, with such fatal consequences to the prisoner whose defence may rest on his testimony. So far as the record shows, there was no more reason for suspecting the witness Bowling of false swearing in favor of Layton, because of dislike for Henderson, than there was for suspecting the motives of other witnesses; and the intimation that there was,

contained in the instruction, may have carried weight into the scale against the prisoner, to whose defence the evidence of this witness was so important.

It is quite probable that the jury concluded that the judge looked with disfavor and suspicion on the witness Bowling, and that his evidence was considered by the jury under the influence of the conviction that the presiding judge thus regarded it, and therefore admonished the jury to view it with suspicion.    Whether Bowling was to be believed was for the jury to determine, without any suggestion, or intimation, or assumption, in the shape of an hypothesis, particularly applied to him by name, in an instruction from the court.    It may be that there was evidence on which to base this instruction, but all that the record shows on this subject is an unsuccessful effort by the State's counsel to obtain from the witness an admission of dislike for Henderson.    It is not admissible to make the fruitless interrogation, by counsel, of a witness the basis of an instruction which embodies as an hypothesis the existence of what counsel had tried, but wholly failed, to get any evidence of.    " It is mockery to talk of evidence, if it is discretionary with the tribunal to which it is addressed to disregard it upon the vague suggestion, unsupported by proof, of the bias of the witness."    *Newton* v. *Pope*, 1 Cow. 109.    We cannot say what influence this instruction exerted in producing the verdict.

Judgment reversed and case remanded.